Anthony F. Geraci, Esq. (SBN 238892)
Amy E. Martinez, Esq. (SBN 245871)
**GERACI LAW FIRM**
90 Discovery
Irvine, CA 92618
Tele.: (949) 379-2600
Fax:  (949) 379-2610
E-mail: a.stephenson@geracillp.com

Attorneys for secured creditor, ABLP Properties Visalia LLC

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA – FRESNO**

| | |
|---|---|
| In Re<br><br>MAGNOLIA PARK<br><br>        Debtor. | Case No. 19-15279<br><br>Chapter 11<br><br>D.C. No.: GLF-2<br><br>**SECURED CREDITOR, ABLP PROPERTIES VISALIA LLC'S MOTION FOR RELIEF FROM STAY (UNLAWFUL DETAINER); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:     February 26, 2020<br>Time:    9:00 a.m.<br>Location: Courtroom 11<br>              2500 Tulare Street, 5th Floor,<br>              Fresno, California |

    Secured creditor, ABLP Properties Visalia LLC ("Movant"), hereby moves this Court for an Order granting relief from the automatic stay on the grounds set forth in the attached Motion for Relief from the Automatic Stay, pursuant to 11 U.S.C. §§ 362(d)(1) and (d)(2), to initiate and proceed with the unlawful detainer proceeding relating to the real property commonly known as 2948 and 2950 East Douglas Avenue, Visalia, California 93292 (the "Property") (the "Motion") and provides the following in support of the Motion.

///

1

SECURED CREDITOR, ABLP PROPERTIES VISALIA LLC'S MOTION FOR RELIEF FROM STAY; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Movant respectfully requests this Court grant relief from the automatic stay because (1) the debtor, MAGNOLIA PARK ("Debtor"), has no right to continued occupancy or possession of the Property because Movant acquired title to the Property by foreclosure sale before the bankruptcy petition was filed and recorded the Trustee's Deed Upon Sale within the period provided by California law for perfection; (2) Debtor's right to possession should be terminated because lease payments have not been made after the filing of the bankruptcy petition; and (3) the bankruptcy case was filed in bad faith. For these reasons, Movant's Motion for Relief from the Automatic Stay should be granted pursuant to 11 U.S.C. § 362(d)(1) and (d)(2).

## II. JURISDICTION

This Court has jurisdiction over this matter pursuant to 18 U.S.C. §§ 2334 and 28 U.S.C. § 157. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(G) and (O). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## III. RELIEF REQUESTED

Movant requests the following relief:

a. Relief from stay pursuant to 11 U.S.C. § 362(d)(1) and (d)(2);

b. Movant (and any successors or assigns) may proceed under applicable nonbankruptcy law to enforce its remedies to obtain possession of the Property;

c. The 14-day stay prescribed by FRBP 4001(a)(3) is waived;

d. If relief from stay is not granted with respect to the Property, adequate protection in the form of regular payments at the market rent rate (if higher than the $26,000/month alleged lease amount because any existing lease was extinguished upon completion of the trustee's sale) from the petition date;

e. For the Court's Order to be binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of the Bankruptcy Code; and

f. For such other and further relief as is just and appropriate in the circumstances of this case.

Geraci Law Firm
90 Discovery
Irvine, California 92618
T: (949) 379-2600; F: (949) 379-2610

## IV. STATEMENT OF FACTS

### A. THE LOAN

In 2017, the Magnolia Group, Inc. ("Magnolia Group") was the owner of the real property located at 2948 and 2950 East Douglas Avenue, Visalia, California 93292 (the "Property"). Magnolia Park, LLC (i.e. Debtor) operated an assisted living facility on the Property called Magnolia Park Assisted Living. (Declaration of Jerry Sanada filed concurrently herewith [Sanada Decl.], p. 2, ¶5). Magnolia Group and Debtor were and are affiliated entities which are both owned by the same person: Esperanza Hansen Gonzales.

In order to rehabilitate the premises on which Debtor operates and increase the number of authorized occupants, Magnolia Group approached ABLP REIT, LLC ("ABLP") for the requisite financing. (Sanada Decl., p. 2, ¶6). On or about January 27, 2017, Magnolia Group executed a promissory note ("Note") evidencing a loan made by ABLP to Magnolia Group in the original principal amount of $2,300,000.00 (the "Loan"). (Sanada Decl., p. 2, ¶7, Exhibit "1"). On or about January 27, 2017, as security for Magnolia Group's obligations under the Note, Magnolia Group executed a Deed of Trust granting ABLP a security interest in the Property. (Sanada Decl., p. 3, ¶9). The Deed of Trust was recorded on January 31, 2017 as Instrument Number 2017-0005922 in the Official Records of Tulare County, State of California (the "Douglas Deed of Trust"). (Sanada Decl., p. 3, ¶9, Exhibit "2").

At the same time, Debtor entered into a Guaranty Agreement guaranteeing the "full and faithful payment of all amounts owed and performance of each and every one of the obligations, responsibilities, and undertakings to be carried out, performed, or observed by Borrower under the…" Loan. Guaranty Section 1.1. (Sanada Decl., p. 3, ¶10, Exhibit "3").

Additionally, Movant (as "Beneficiary"), Magnolia Group (as "Landlord") and Debtor (as "Tenant") also signed a Subordination Agreement. That Subordination Agreement stated, inter alia, that:

a) "Landlord and Tenant are affiliated entities and have not entered into a written lease agreement. All rights of Tenant shall be referred to herein as the 'Tenancy Interest.'"
   Recital A

b) "The Tenancy Interest and the leasehold estate created thereby and all of Tenant's rights thereunder shall be and shall at all times remain subject, subordinate and inferior to the Deed of Trust and the lien thereof, and all rights of Beneficiary." Section 1

c) "Tenant acknowledges and agrees that: … (e) … In the event that Beneficiary notifies Tenant of a default under the Deed of Trust and demands that Tenant pay its rent and all other sums due under the Tenancy Interest to Beneficiary, Tenant shall honor such demand…" Section 3(e)

d) "Tenant acknowledges and agrees that: … (h) … a foreclosure by Beneficiary shall eliminate the Tenancy Interest and Tenant shall have no interest in the Property. Tenant agrees to vacate the premises upon demand by Beneficiary." Section 3(h)

e) "This Agreement supersedes any inconsistent provisions of the Tenancy Interest." Section 7(a)

The Subordination Agreement was signed by Esperanza Hansen Gonzales as President of both Magnolia Group and Debtor. (Sanada Decl., p. 3, ¶11, Exhibit "4").

Magnolia Group utilized the Loan proceeds to expand Debtor into a 33-unit/48-bed facility. (Sanada Decl., p. 4, ¶13).

**B. THE DEFAULTS UNDER THE LOAN DOCUMENTS**

Pursuant to the Note, monthly loan payments of interest were to commence on February 1, 2017, and continue on the first day of each month thereafter through and including February 1, 2018. (Sanada Decl., p. 4, ¶14). On or about February 1, 2018, as an accommodation to Magnolia Group, Magnolia Group executed an "Extension of Note & Deed of Trust, Security Agreement and Financing Statement; Request for Notice" (the "Extension") extending the maturity date of the Note to August 1, 2018 (the "Maturity Date"). (Sanada Decl., p. 4, ¶15, Exhibit "5"). Hereinafter, the Note, Deed of Trust, Extension, Subordination Agreement, and all other documents executed in connection with the Loan, may at times be collectively referred to as the "Loan Documents." ABLP subsequently assigned the Loan Documents to Movant. (Sanada Decl., p. 4, ¶18, Exhibit "6").

Magnolia Group failed to pay the Loan in full on or before the Maturity Date pursuant to

the terms of the Note and Extension and despite having been given notice of the default, has failed to cure said default. (Sanada Decl., p. 4, ¶20).

### C. MOVANT FORECLOSES AND BECOMES NEW RECORD TITLE HOLDER TO THE PROPERTY

Accordingly, ABLP initiated foreclosure proceedings against the Property by recording a Notice of Default as to the Property on or about April 22, 2019 as Instrument Number 2019-0019854 in the Official Records of the County of Tulare, State of California. (Sanada Decl., p. 5, ¶22, Exhibit "7"). A Notice of Trustee's Sale as to the Property was recorded on October 21, 2019 as Document Number 2019-0061547 in the Official Records of the County of Tulare, State of California scheduling a trustee's sale for November 14, 2019. (Sanada Decl., p. 5, ¶24, Exhibit "8"). On or about November 22, 2019, a trustee's sale was conducted and title to the Property reverted to Movant as the foreclosing lienholder. (Sanada Decl., p. 5, ¶26, Exhibit "9"). The Trustee's Deed Upon Sale was recorded on November 26, 2019 as Document Number 2019-0069912 in the Official Records of the County of Tulare, State of California. The recordation of the Trustee's Deed Upon Sale extinguished Debtor's alleged lease, and Movant is therefore entitled to seek immediate possession of the Property. (Sanada Decl., p. 6, ¶ 30).

During the foreclosure process, Movant hired Northstar Senior Living to help with an orderly transition and management of the Property and assisted living facility located thereon. On or about November 26, 2019, Movant instructed a representative from Northstar Senior Living to contact the Debtor to arrange an orderly transition that protected the best interests of the residents of the assisted living facility, but Debtor refused to cooperate. (Sanada Decl., p. 5, ¶28).

### D. DEBTOR FILES THE INSTANT CHAPTER 11 PETITION AND ASSERTS A POSSESSORY INTEREST IN THE PROPERTY

On or about December 19, 2019, Debtor filed the instant Chapter 11 petition. (*See* Voluntary Petition [Dk. 1]). On or about January 16, 2020, Debtor filed its schedules [Dk. 23], indicating it has a triple net lease with Magnolia Group for the Property to operate an assisted living facility for $26,000.00 per month in rent—although an actual copy of the lease has not been produced. (*See* Schedule G [Dk. 23]). Debtor asserts a possessory interest in the Property despite

Geraci Law Firm
90 Discovery
Irvine, California 92618
T: (949) 379-2600; F: (949) 379-2610

Movant's foreclosure sale held on November 22, 2020 that extinguished any and all lease Debtor may have had on the Property. (Sanada Decl., p. 5, ¶3). Moreover, Debtor has not attempted to affirm the lease with Movant or offer Movant monthly rent payments. (Sanada Decl., p. 6, ¶31).

For the reasons set forth below, Movant now seeks relief from stay to pursue its rights under California law to evict Debtor from the Property.

## V.  AN ORDER GRANTING MOVANT RELIEF FROM STAY IS PROPER

### A.  *Relief from Stay is Proper Under 11 U.S.C. § 362(d)(1) for Cause*

Section 362(d)(1) of the United States Bankruptcy Code provides that on request of a party in interest and after notice and a hearing, the Court shall grant relief from the stay "for cause, including the lack of adequate protection of an interest in property of such party in interest." *Kronemyer v. American Contractors Indemnity Co.,* 405 B.R. 915, 921 (B.A.P. 9th Cir. 2009). As the Court in *In re Richter*, 525 B.R. 735, 758 (Bankr. C.D. Cal. 2015), noted:

> Cause is not defined by the Bankruptcy Code, so it must be determined on a case-by-case basis. *Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.),* 912 F.2d 1162, 1166 (9th Cir.1990). **After a prepetition foreclosure sale of the debtor's property and prepetition recordation of the trustee's deed, the debtor no longer holds equitable or legal title to the property and the filing of a petition cannot reinstate the debtor's title**. *Edwards v. Wells Fargo Bank, N.A. (In re Edwards),* 454 B.R. 100, 106 (9th Cir. BAP 2011). "**Instead, the debtor is essentially a 'squatter,' and thus cause for relief from stay is established.**" *Id.*

(emphasis added). For the reasons set forth below, there is cause for this Court to grant Movant relief from stay.

### 1.  *Debtor does not own the Property*

There is cause to grant relief from stay here because Debtor has no right to continued occupancy of the Property. It cannot be stressed enough that Debtor does not own the Property, never did own the property, and was not a tenant of Movant. Instead, Debtor allegedly leased the Property from Magnolia Group, the former owner of the Property (although both entities have the same sole owner and managing member—Esperanza Hansen).  When Movant foreclosed on the Property on November 22, 2019, it took title to the Property as the foreclosing lienholder and became the owner of record. The Trustee's Deed Upon Sale was recorded on November 26, 2019 reflecting this change of title ownership. (Sanada Decl., p. 5, ¶26, Exhibit "9"). Since both

Geraci Law Firm
90 Discovery
Irvine, California 92618
T: (949) 379-2600; F: (949) 379-2610

Movant's foreclosure sale and the recordation of the Trustee's Deed Upon Sale occurred before the instant bankruptcy petition was filed and within the necessary time period provided by California law for perfection, Debtor has no right to continued occupancy of the Property. Movant respectfully requests relief from stay to pursue its rights under California law to evict Debtor from the Property. *See, e.g.*, *In re Richter*, 525 B.R. 735, 758 (Bankr. C.D. Cal. 2015); *Edwards v. Wells Fargo Bank, N.A.*, 454 B.R. 100, 106 (9th Cir. BAP 2011).

### 2. To the extent Debtor had a lease with Magnolia Group to occupy the Property, that lease was extinguished upon Movant's foreclosure sale

It is well settled law that "[a] lease which is subordinate to the deed of trust is extinguished by the foreclosure sale." *See Dover Mobile Estates v. Fiber Form Products, Inc.* (1990) 220 Cal.App.3d 1494, 1498; *Bank of America v. Hirsch Merc. Co.* (1944) 64 Cal.App.2d 175, 1821; *Dugand v. Magnus* (1930) 107 Cal.App. 243, 247. Under traditional California law, "[a] foreclosure proceeding destroys a lease junior to the deed of trust, as well as the lessee's rights and obligations under the lease. *See Dover Mobile Estates v. Fiber Form Products, Inc.*, 220 Cal.App.3d at p. 1498–99. Therefore, if there is a foreclosure sale by "one having a superior title to that of the tenant, the tenant's interest will be defeated by the sale under the deed of trust." *Id.* at 1499.

In *Dover Mobile Estates v. Fiber Form Products, Inc.*, the court held that a lease was expressly subordinate to a deed of trust, and the trustee's sale extinguished the lease. Specifically, the lease in *Dover Mobile Estates* had the following contract term: "Section 21.1 provides, '[t]enant agrees that this Lease shall be subordinate to any mortgages or deeds of trust ... that may hereafter be placed upon the premises, ...' The court found that the lease was subordinate to the deed of trust and was therefore extinguished by the trustee's sale. In fact, the court upheld the long-standing law regarding priority liens and subordinations. Specifically, the court held

> "We find no reason to question the continued validity of this rule. The fact that foreclosure terminates a subordinate lease comports with basic notions of priorities and notice. If the trust deed is recorded before the lease is created, then the tenant enters into the lease with notice that the lease will be subordinate. ***Alternatively, if the tenant and landlord expressly agree that the lease should be subordinate, as is the case here, then the tenant is aware of the possibility that***

Geraci Law Firm, 90 Discovery, Irvine, California 92618, T: (949) 379-2600; F: (949) 379-2610

*its lease could be extinguished by foreclosure*. Indeed, Fiber Form *expressly agreed that the lease was subordinate to any trust deeds and therefore it risked having foreclosure terminate the lease*. That Fiber Form, rather than Dover, ultimately desired that the lease be terminated upon foreclosure should be of no import." *Id.* at 1500 (Emphasis added).

Debtor has not provided a copy of the lease or any other evidence to show that it actually had a lease to commercially use the Property. Regardless, Debtor signed the Subordination Agreement in connection with Movant's predecessor's Loan secured by the Property. The Subordination Agreement makes it clear that Debtor's tenancy interest in the Property "shall be and shall at all times remain subject, subordinate and inferior to the [ABLP] Deed of Trust and the lien thereof, and all rights of Beneficiary." (Sanada Decl., Exhibit "4", p. 1, ¶1). Moreover, the subordination agreement specifically states that "[i]n the event of foreclosure of the Deed of Trust, or upon a sale of the Property pursuant to the trustee's power of sale contained therein, or foreclosure, then [Debtor] acknowledges its tenancy interest in the Property shall cease." (Sanada Decl., Exhibit "4", p. 2, ¶3). Therefore, by the subordination agreement's own express plain language, Debtor expressly agreed that its lease of the Property from Magnolia Group was subordinate and would be extinguished in the event of Movant's foreclosure sale. There is no question that Debtor's purported lease agreement is clearly subordinate to Movant's Deed of Trust and therefore, was extinguished at the trustee's sale on November 22, 2019. As such, Debtor no longer has a legal claim for possession of the Property.

### 3. *Debtor has not made any rent payments to Movant*

Furthermore, Debtor's right to possession should be terminated because Debtor has not made any lease payments to Movant since the filing of the bankruptcy petition. As set forth above, Movant foreclosed on the Property on November 22, 2019. Debtor has refused to acknowledge the foreclosure, relinquish possession of the Property, or cooperate with an orderly transition for the good of the residents in the Assisted Living Facility, and Debtor has failed to tender any December or January rent payments to Movant, and despite allegedly having a triple net lease, Debtor incurred a $40,000.00 default by failing to pay the 2019 property tax bill. (Sanada Decl., p. 5, ¶28; p. 6, ¶32). This means that Debtor has been collecting significant funds from the assisted living facility patients each month while maintaining possession of the Property (that it does not own)

rent free. (Sanada Decl., p. 6, ¶33-35 Exhibit "10"). Thus, Debtor's continued possession of the Property should be terminated and Movant should be granted relief from stay to proceed with unlawful detainer proceedings against Debtor.

For all of these reasons, cause exists for the Court to grant relief from stay under 11 U.S.C. § 362(d)(1).

### B. Relief from Stay is Proper Under 11 U.S.C. § 362(d)(1) for Bad Faith

A creditor is also entitled to receive relief from the automatic stay for "cause" if the bankruptcy case was filed in bad faith. 11 U.S.C. § 362(d)(1); *In re Zed, Inc.*, 20 B.R. 462, 464 (Bankr. N.D. Cal. 1982); *In re Fadel*, 492 B.R. 1, 11 (B.A.P. 9th Cir. 2013) ("What constitutes 'cause' to terminate the stay is determined on a case-by-case basis."). A "[d]ebtor bears the burden of proving that the petition was filed in good faith." *Leavitt v. Soto (In re Leavitt)*, 209 B.R. 935, 940 (B.A.P. 9th Cir. 1997) (citing *In re Powers*, 135 B.R. 980, 997 (Bankr. C.D. Cal. 1991)); *In re Silberkraus*, 336 F.3d 864, 870 (9th Cir. 2003).

The instant case was filed by Debtor in bad faith and is yet another example of Debtor's and Debtor's affiliated company, Magnolia Group's, tactics to delay and try to beat down creditors, like Movant. As set forth above, Debtor filed the instant bankruptcy case a few weeks after Movant's foreclosure sale on the Property and while Movant's property manager, Northstar Senior Living, was attempting to arrange an orderly transition to take possession and control over the Property on behalf of Movant. In addition, Debtor only filed a few case commencement documents with the bankruptcy petition and did not file its schedules until nearly a month later when this Court threatened to dismiss its petition for failure to file required documents. (See Schedules, Dk. 23). This bankruptcy case serves as nothing more than a scheme to delay, hinder, and defraud Movant's ability to take possession of the Property, manage the elderly patient care center on the Property, and sell the Property to a third party. Which is unsurprising as Movant, Debtor, and Debtor's affiliated company (Magnolia Group) have a long history of taking advantage of Movant and Movant's predecessor's (ABLP) willingness to bend over backwards for Debtor to give Debtor the time and ability to repay the Loan in full.

Even though the Loan originally matured on February 1, 2018, Movant agreed to postpone

that date to August 1, 2018. (Sanada Decl., p. 4, ¶21). Instead of paying the Loan in full before August 1, 2018, Magnolia Group continued to ask Movant for additional time and then sought a restraining order in state court to halt the sale. (Martinez Decl., p. 2, ¶6). At a hearing on November 13, 2019, the state court ordered Magnolia Group to pay $47,790.00 to Movant within 48 hours in order to effectuate a temporary restraining order halting Movant's foreclosure sale on the Douglas property. (Martinez Decl., p. 2, ¶7). Instead of complying with the court order, and in direct contradiction of the court's order, Magnolia Group mailed Movant a personal check on the second day and, to no one's surprise, the check was returned for insufficient funds several days later. (Martinez Decl., p. 2, ¶8). Now, despite Movant giving Magnolia Group over seventeen months of additional time, Magnolia Group has yet to repay the Loan and instead, has resorted to filing bankruptcy, making unfounded slanderous accusations against Movant and its predecessor, and having its affiliated operating company (Debtor) file bankruptcy. This is Debtor's and Magnolia Group's standard pattern and practice of behavior, and is additional evidence that Debtor and Magnolia Group are using the bankruptcy system as a means of additional delay, just as it has done with the civil court system. All the while, Debtor has been collecting a large amount of revenue from the assisted living facility patients each month and pocketing that money while continuing to squat on the Property without paying rent. (Sanada Decl., p. 6, ¶37). For all of these reasons, cause exists for the Court to grant relief from stay under 11 U.S.C. § 362(d)(1).

### C. Relief from Stay is Proper Under 11 U.S.C. § 362(d)(2)

A creditor is entitled to relief from the automatic stay if property is not necessary to an effective reorganization. 11 U.S.C. § 362(d)(2). It is the debtor's burden to establish that the property is essential for an effective reorganization, i.e. there is a reasonable possibility of a successful reorganization within a reasonable time. *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 376 (1988) (citing § 362(g)); *In re First Yorkshire Holdings, Inc.*, 470 B.R. 864, 869 (B.A.P. 9th Cir. 2012).

Here, the Property is not necessary to Debtor's reorganization because debtor does not own the Property, does not have a leasehold interest in the Property, and is not entitled to any of the equity or profits arising out of the Property. As set forth in detail above, Movant, not Debtor, is

the record title holder of the Property. Movant became the owner of record through its trustee's sale and subsequent recording of the trustee's deed upon sale on November 26, 2019. Debtor has never owned the Property, but instead, allegedly leased the Property from its affiliated company (and Movant's borrower) Magnolia Group. As discussed above, Debtor's lease on the Property was extinguished at the time of Movant's trustee's sale. Thus, Debtor has absolutely no interest in the Property, is not entitled to possession of the Property, and should not be allowed to use the Property in its reorganization as the Property is not part of Debtor's estate.

In short, relief from stay is proper under 11 U.S.C. § 362(d)(2).

### D. The 14-day Stay of Bankruptcy Rule 4001(a)(3) Should be Waived

As indicated above, cause exists to grant relief from the automatic stay in order to preserve and protect Movant's interest in the Property. If relief from the automatic stay is granted, the Court should waive the 14-day stay of Bankruptcy Rule 4001(a)(3) to allow Movant to avoid any further delay in exercising its rights and remedies under the Loan documents and applicable non-bankruptcy law.

## VI. REQUEST FOR ADEQUATE PROTECTION

If relief from stay is not granted, in the alternative, Movant requests this Court order Debtor to make adequate protection payments to Movant.

## VII. CONCLUSION

WHEREFORE, based upon all of the above, Movant requests the following relief:

a. Relief from stay pursuant to 11 U.S.C. § 362(d)(1) and (d)(2);

b. Movant (and any successors or assigns) may proceed under applicable nonbankruptcy law to enforce its remedies to obtain possession of the Property;

c. The 14-day stay prescribed by FRBP 4001(a)(3) is waived;

d. If relief from stay is not granted with respect to the Property, adequate protection in the form of regular payments at the market rent rate (if higher than the $26,000/month lease amount because any existing lease was extinguished upon completion of the trustee's sale) from the petition date;

e. For the Court's Order to be binding and effective despite any conversion of this

bankruptcy case to a case under any other chapter of the Bankruptcy Code; and

  f. For such other and further relief as is just and appropriate in the circumstances of this case.

Date: February 7, 2020         **GERACI LAW FIRM**

             By: _____
               Amy E. Martinez, Esq.
               Alexa P. Stephenson, Esq.
               Attorneys for secured creditor, ABLP Properties Visalia LLC